**UNITED STATES DISTRICT COURT
EASTERN DISTRICTOF MICHIGAN
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA,**

        Plaintiff,                       Case No.  18-20274

-v-                                          Hon. Gershwin A. Drain

**KENNEDY SMITH**

        Defendant.

_____/

**DEFENDANT KENNEDY SMITH'S COMBINED SENTENCING
MEMORANDUM AND MOTION FOR VARIANCE**

Defendant Kennedy Smith submits this sentencing memorandum in support of his sentencing hearing which is scheduled for May 24, 2021 at 11:30 A.M. On June 7, 2018, Mr. Smith appeared before this court and, pursuant to a Rule 11 Plea Agreement, tendered a guilty plea to Count 1 of the Information for the offense of Conspiracy to Distribute Controlled Substances, 21 U.S.C. §§846,841(a)(1) and (b)(1)(B)iii.

**I.   PERTINENT BACKGROUND**

The parties are in receipt of the presentence report and revised addendums which set forth the party's position and objections submitted by defendant. The numerous revised addendums were a result of the opinions *United States v. Jeffrey Havis* 927 F.3d.382 (6th Cir. 2019) rendered subsequent to the Court's acceptance of the guilty plea as well as the enactment of the First Step Act.

The parties agree that under *Havis* Mr. Smith's conspiracy conviction is not a "controlled substance offense" to which the career offender provisions of USSG § 4B1.2

apply. Mr. Smith should accordingly be sentenced under section 2D1.1 of the guidelines. USSG §4B1.1(a).

The government has taken the position that as a result of Section 401 of the First Step Act, it will not seek enhancement of his sentence that had subjected Mr. Smith to a 10 year minimum sentence.

Defendant takes issue with both the offense level and criminal history category level utilized in the PSR. For the reasons more fully set forth in this memorandum, Mr. Smith takes issue with the offense level and criminal history category calculated in the PSR. Mr. Smith also requests a significant downward variance from the advisory guidelines.

## II  APPLICABLE LAW-SECTION 3553(a) FACTORS

It is well settled that the United States Sentencing Guidelines are not a mandatory constraint on the District Court's sentencing discretion. *United States v. Booker,* 543 US 200, 245, 125 S. Ct. 738, 160 L.Ed2d 621 (2005). Guideline calculations are advisory and are only one of the factors to consider when imposing a sentence "sufficient but not greater than necessary" to comply with the purposes set forth in Section 3553(a)(2). *Gall v. United States*, 552 U.S.38, 128 S.Ct. 586, 596, 196 L.Ed 2d 445 (2007). *Holguin-Hernandez v. United States,* 140 S.Ct. 762, 765-66 (2020).

Post- *Booker* case law "requires a sentencing court to tailor the sentence in light of other statutory concerns. *United States v. Collington*, 461 F 3d 805 (6th Cir. 2006). No single factor than any other §3553 (a) factor should be used in arriving at an appropriate sentence. There is no limitation on what the court can consider at sentencing 18 U.S.C. §3661, *Rita*, 277 S. Ct. at 2465.

In fashioning a sentence that fits the crime, courts should not "leave compassion and common sense at the door to the courtroom". *United States v. Johnson*, 964 F.2d 125 (2nd Cir. 1992). A sentencing court is free to reject a guideline sentence after due consideration of §3553 (a), may vary from the guidelines, and "may not presume that the guideline range is reasonable". *Gall, supra*, 128 S. Ct. at 586-587.

Section 3553(a)(2) purposes are:

i. To reflect the seriousness of the offense to promote respect for the law and to provide just punishment for the offense;

ii. To afford adequate deterrence to criminal conduct;

iii. To protect the public from further crimes of the defendant; and

iv. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A sentence outside the guidelines may be a reasonable one. *Gall v. United States*, 552 US 38, 128 SCT, 586, 602, 169 LED2d 445 (2007). The court is free to reject a guideline sentence after due consideration of all the §3553(a) factors. *Kimbrough v. United States*, 552 U.S. 85, 128 S Ct 558, 570 (2007).

A sentencing court may properly consider arguments that the guideline range fails to adequately reflect the §3553(a) factors. *Rita v. United States*, 551 U.S. 338, 127 S Ct 2456, 2465, 168 L.Ed 2d 203 (2007). This court is free to vary from the guideline range based upon policy consideration, including disagreements with the guidelines. *Kimbrough, supra*, at 128 S.Ct.577. A correct calculation of the sentencing guideline range is just the beginning for the sentencing court. *Rita, supra* at 127 S.Ct. 2456. The sentencing court must then consider all the 3553(a) factors to identify an appropriate

sentence. *Gall, supra* at 128 S.Ct. 596. The court "may not presume that the guidelines range is reasonable." *Gall, supra* at 128 S. Ct. 586, 596-97.

In *United States v. Grossman*, 513 F3d 592 (6th Cir. 2008 the Sixth Circuit affirmed the lower court's substantial downward variance. In writing for the Court, Judge Sutton observed that the District Court had considered both the guidelines and the §3553(a) factors, and then based its decisions on rationally based individualized considerations. See also *United States v. Adelson*, 441 F. Supp 3d 506, 512 (S.D.N.Y 2006) (describing the "utter travesty of justice that sometimes results from the guidelines' fetish with abstract arithmetic, as well as the harm that guideline calculations can visit on human beings if not cabined by common sense" aff'd, 301 Fed. Appx.93,95 (2nd 2008); *United States v. Parris*, 573 F. Supp 2d at 745, 754 (describing the Sentencing Guidelines as a "black stain on common sense" and sentencing the Defendant "to a term of incarceration of 60 months in the face of an advisory guidelines range of 360 to life").

**III     DEFENDANT'S OBJECTIONS TO PSR**

    1.     **Acceptance of Responsibility Reduction**

Mr. Smith submits that his offense level should be reduced at the minimum by 2 or 3 points for his acceptance of responsibility for the offense to which this Court accepted his guilty plea. The Rule 11, accepted by the Court, reflects the parties' agreement to a three-point reduction.

As a result of alleged subsequent criminal conduct, referenced in PSR ¶ 9,which did not resulted in prosecution, the government and probation, oppose application of the acceptance of responsibility level reduction.

4

Mr. Smith submits that his subsequent conduct should not be considered in a vacuum to foreclose this court reducing his offense level. It was compelled and necessitated by understandable safety concerns which the government is aware of. Mr. Smith owed dangerous people for the controlled substances that law enforcement had confiscated from him in the instant prosecution.

2.   **2 point offense level possession of a weapon enhancement under USSG Manual § 2D1.1**

Due to his similar safety concerns, Mr. Smith requests the Court not apply the 2 point enhancement under § 2D1.1 in calculating the guidelines.

IV.   **THE NATURE AND CIRCUMSTANCE OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF DEFENDANT**

Mr. Smith is 53 years old. He was born and raised in the City of Detroit. He has a troubled and unfortunate history of substance abuse and addiction dating back to age 18, as well as mental health issues, which have directly contributed to what he submits is an overstated and overrated criminal history category level.

His drug addiction directly led to his involvement in the instant conspiracy offense. It is of import to note that Mr. Smith was by no means a big-time drug dealer who had accumulated substantial assets. The PSR contains no evidence that he has ever personally accumulated any remarkable sums of money, let alone in this conspiracy.

It is also significant that in the related case of Defendant Dhia Shakir Kalasho, 18-CR-20063-01, defendant Kalasho had pled guilty to Count I of a Third Superseding indictment on April 3, 2019, and sentenced by the Honorable Bernard A. Friedman to 60 months custody, followed by a four year term of supervised release. [PSR pp 2,6,7].

Mr. Smith has never contested his culpability in the conspiracy. He immediately accepted responsibility for his conduct. At no time did he ever impede or obstruct justice.

The circumstances of his addiction and association with others was a causal reason contributing to his subsequent continuation in the controlled substance milieux.

Mr. Smith's personal and family history is set forth in the PSR. As reflected in the attached exhibits, since his incarceration he has reconnected with and received the support of family members. He has been an active member in his church, First Baptist World Changers as noted in the recommendation of Senior Pastor Lennell D. Caldwell and Pastor Louis Smith. He has a verified employment history with Ford Motor Company, certified to operate an automated hoist. Mr. Smith "was an outstanding operator who did an exceptional job", well liked "always on time and did not miss work". Mr. Smith is eligible to retain his job at Ford upon his release from custody. Mr. Smith plans on continuing his education and obtain a business degree.

Mr. Smith has been incarcerated at Milan for 33 months. His behavior has been a model of rehabilitation. In spite of the harsh confinement conditions necessitated by Covid-19, he has not incurred any citations and tickets. He has been given two jobs- unit orderly and "utility" cleaning the main corridor. He has also maintained and strengthened his relationship with Ebony Simmons. They are now engaged and plan to marry upon his release. Mental health records from Team Mental Health have been provided to the court under seal. He is requesting the Court recommend RDAP as well as appropriate mental health programs.

### To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense

Mr. Smith readily admits that the offense to which he has pled guilty and will be sentenced is serious. It is suggested that the time and circumstances of the confinement

which he has already served for the instant offense are sufficient to deter conduct of others and to promote respect for the law.

### V. DEFENDANT'S CRIMINAL HISTORY CATEGORY VI IS OVERSTATED

Mr. Smith submits that his criminal history Category VI as computed by probation, is overstated as defined under USSG §4A1.3(b) 1. None of his convictions are for assaultive offenses. His criminal history is directly related to his substance abuse/mental health history.

Eight of the 13 points utilized to arrive at Level VI, (PSR ¶¶ 37, 38, 40, 42 & 43), are for retail fraud to sustain his drug addiction. The remaining 5 points used to reach Level VI (PSR ¶¶ 36, 39 & 41), are related to his controlled substance history. Of additional import is that the majority of these convictions are ten years old.

It has been recognized that Criminal History Category Levels can be overstated and accordingly, the court has the discretion to utilize a lower Level. See eg *United States v. Shoupe*, 988 F 2d 440 (3rd Cir. 1993; *United States v. Mudd* (16- 5798 (6th Cir. 2017); *United States v. George Toscana*, 241 Fed Appx 325 (6th Cir. 2007). See also *United States v. James Johnson*, 553 F. 3d 990 (6th Cir. 2005) discretion to reject old crack-cocaine guideline calculations).

Mr. Smith requests the Court's utilize Criminal History Category III or IV to compensate for his overstated criminal history in arriving at an appropriate sentence.

#### To protect the public from Further Crimes of the Defendant

Mr. Smith is now 53 years old. Statistically his risk of recidivism is low. His close support family and religious support group, the prospects of a new married life with his fiancé and a good job waiting militate in favor of reducing the need for any further lengthy incarceration.

### VI. ADDITIONAL POLICY CONSIDERATIONS

## HARSH PRESENTENCE CONFINEMENT CONDITIONS AT MILAN WARRANTING DOWNWARD   DEPARTURE

Harsh presentence confinement conditions may also warrant downward guidelines departure.  *United States v. Pressley,* 345 F.3d 120 (2003), recognizing a district court's discretion to reduce a sentence to account for harsh conditions of 23 hour per day lock downs prior to trial. Citing *United States v. Carty*, 264 F.3d 191, 196 (2nd Cir. 2001).

The COVID -19 pandemic outbreak at the Milan Detention Center has resulted for sustained periods these past year(s) in untoward and unprecedented confinement conditions of  24 hour lock downs. See Department of Justice Inspector General Report of Conditions at Milan, pages 15, 37. oig.justice.gov/sites/default/files/reports/21-032.pdf.

It is respectfully suggested that these harsh conditions, being tantamount to solitary confinement, are proper factors for the court to also consider in Mr. Smith's request for a downward departure.

VII.     **CONCLUSION AND RELIEF REQUESTED**

For far too many years, our country has been plagued with mass overcrowding in our prisons. Finally, there is now a national outcry and recognition of the need for major changes in the criminal justice system, including the end of lengthy basketball prison sentences, which not only destroy families, but have their genesis in, and aggravate deep racial injustice. To that end, on March 21, 2021, U.S.Senate Majority Whip Dick Durbin (D-IL), Chair of the Senate Judiciary Committee, and Senator Mike Lee (R-UT), a member of the Senate Judiciary Committee introduced the Smarter Sentencing Act of 2021. It is titled "S.1013-Abill to focus limited Federal Resources on the most serious

offenders'. If passed, this bill will significantly further reduce mandatory minimums for drug crimes.

Greater utilization of available tools of non-custodial court ordered strict supervision and programs can go a long way towards alleviating the strife permeating our country.

Kennedy Smith respectfully submits that the cumulative combination of an overstated guideline range, coupled with consideration of the harsh presentence confinement conditions at Milan, his low risk of recidivism on account of his age, verified post-confinement employment, close religious ties and marriage plans, militate in this Honorable Court granting his request for a downward variance and impose a sentence "sufficient but not greater than necessary to comply with Section 3553 factors.

Mr. Smith also requests the court recommend the Residential Substance Abuse Program (RDAP) and BOP placement close to his family in Michigan at FCI Milan.

Respectfully submitted,

*/s/ Alvin C. Sallen*
ALVIN C. SALLEN (P23797)
Attorney for Defendant
30100 Telegraph Rd., Ste 360
Bingham Farms, MI 48025
(248) 646-4686
asallenlaw@gmail.com

Dated: May 6, 2021

**CERTIFICATE OF SERVICE**

I affirm that on May 6, 2021, I electronically filed the above document with the Clerk of the court utilizing the ECF system which will notify counsel of record. I also e-filed the document to United States Probation Officer Lukas W. Docherty at Lukas_Docherty@miep.uscourts.gov.

*/s/Alvin C. Sallen*
Alvin C. Sallen